[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 11, 2005
THOMAS  K. KAHN
CLERK

No. 04-10767
Non-Argument Calendar
_____

BIA No.  A79-469-947


LUZ MARINA LESAMA DE RODRIGUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 11, 2005)**

Before EDMONDSON, Chief Judge, HULL and WILSON, Circuit Judges.

PER CURIAM:

Luz Marina Lesama de Rodriguez, a native and citizen of Colombia, petitions for review of the final order of the Board of Immigration Appeals (BIA), which affirmed the immigration judge's denial of asylum, denial of withholding of removal, and denial of relief under the United Nations Convention Against Torture (CAT).[1]  Removal proceedings commenced after 1 April 1997; the permanent provisions of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern this petition.  We deny the petition and affirm the BIA's decision.

At the hearing before the IJ, Petitioner testified that she was a catechist at a church in Bucamaranga, Santander province, Colombia.  As a catechist, she taught catechism and "Christian doctrine" to groups of 10 to 12 children aged 9 to 12 years old.  Petitioner taught catechism from 1997 until February 2000, with a four-month break at some point before that time.  She claimed that she had been persecuted by guerillas, particularly the ELN (Ejercito de Liberacion Nacional),

_____

[1] Petitioner offers no substantive argument on the IJ's and BIA's denial of CAT relief.  This issue is abandoned.  See Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003) (deeming an issue waived where a party fails to include argument and only makes a passing reference to the order appealed from).

because of her religious beliefs and her teaching.  Petitioner indicated that she encouraged the children to resist the recruiting efforts of the ELN: she told them not to do "anything that was against their family or against the country" and characterized the ELN as "criminals" and "assassins."

According to Petitioner, beginning in March 1999, the ELN contacted her daily by telephone and (1) demanded that she stop teaching the children about religion, (2) told her to leave the country, (3) threatened to kidnap her and make her "disappear", and (4) threatened to "put an end" to her and her family. Petitioner claimed that several times the callers identified themselves as ELN members, and on a couple of occasions, the callers indicated that they were calling on behalf of ELN commanders.

Petitioner testified that she tried to avoid the ELN by moving in with her sister in a small town 15 minutes away from Bucamaranga.  She later returned to work at the church, and the threatening calls resumed.  She asked for help from the parish priests, but they told her they could do nothing and that their lives were at risk.  She also reported the threatening calls to the police, who were unhelpful. Petitioner attempted to relocate within Colombia, but stated that none of her friends took her because they were afraid to get involved with her.  Petitioner

3

feared that the ELN could find her anywhere because it has cells throughout Colombia.

In March 2000, Petitioner moved in with her sister for two months and came to the United States in May 2000. Petitioner received the last threatening calls immediately before she moved in with her sister. Petitioner has three adult children: two daughters living in Cartagena, Colombia, and one son believed to be in Venezuela. Petitioner submitted a letter from a priest at her church verifying that she had worked as a catechist from 1997 to 2000.

The IJ denied asylum, withholding of removal, and CAT relief: Petitioner's testimony was not sufficiently detailed to provide a plausible account of the basis of her fears. The IJ acknowledged that Petitioner's testimony was consistent with her asylum application, but stated that the asylum application and addendum contained significantly more detail than her testimony. The IJ concluded that Petitioner's testimony lacked specific detail about (1) the name, organizers, and place and time of the catechism meetings, and whether others involved received threats, (2) the students she taught, (3) the advice she gave the children on the attempted recruitment by guerillas, and (4) the substance of the threatening calls.

The IJ also noted that Petitioner failed to mention when she took the four month break from teaching. And, the IJ expressed concern about (1) why

4

Petitioner continued with her work, despite the threatening calls, (2) why the ELN did not follow through with its threats and act against her, (3) why Petitioner wrote in her addendum that her daughters had been mentioned in the threatening calls, but then failed to mention this fact at the hearing, (4) why Petitioner could not relocate within Colombia and why her daughters were not in danger, (5) why Petitioner did not attempt to move or change her phone number immediately after the threats began, and (6) why the priest did not mention the threatening calls in his letter, despite Petitioner's testimony that the parish priests were aware of the threats. And the IJ pointed to the U.S. State Department's Asylum Profile and Country Report on Colombia: the IJ noted that these documents mentioned that religious personnel occasionally were targeted for persecution, but that it necessarily did not follow that Petitioner was targeted.

Petitioner argues that her asylum application, her hearing testimony, and the Asylum Profile and Country Report, contain enough evidence to compel a finding that she had a well-founded fear of persecution based on her religious beliefs.[2] We cannot agree.

---

[2] Petitioner argues that the IJ departed from the Federal Rules of Evidence in determining that her testimony was not credible. But the record does not show that the IJ "impeached" her testimony or found it wholly incredible: the IJ determined that Petitioner's testimony lacked the requisite detail and corroboration to establish asylum eligibility. We need not further address this claim.

"The BIA's factual determination that [an alien] is removable and not entitled to asylum must be upheld if it is supported by substantial evidence." Mazariegos v. Office of the U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). The substantial evidence standard is "highly deferential": we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation and internal quotation marks omitted). The BIA adopted the IJ's reasons for denying Petitioner's requests for asylum and withholding of removal: we review the IJ's decision as if it were the BIA's. See id.

An alien may obtain asylum if she is a "refugee": a person unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1). To establish asylum eligibility, Petitioner must show (1) past persecution (in this case on account of religion), or (2) a "well-founded fear" that her religion will cause future persecution. 8 C.F.R. § 208.13(a), (b)(1). A showing of past persecution creates a presumption of a "well founded fear" of persecution. 8 C.F.R. § 208.13(b)(1).

Substantial evidence supports the BIA's determination that Petitioner failed to demonstrate asylum eligibility. First, the IJ did not err in determining that Petitioner failed to prove that she showed past persecution. Petitioner testified only that she received threatening phone calls from persons identifying themselves as ELN members. She did not allege that she was visited in person or that the ELN attempted to follow through on these threats. These unfulfilled threats do not rise to the level of "persecution." See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (writing that persecution is an "extreme concept": it requires "more than a few isolated incidents of verbal harassment or intimidation," and "mere harassment does not amount to persecution") (citation omitted).

Second, the evidence does not compel the conclusion that Petitioner has a well-founded fear of future persecution based on her religious beliefs. The IJ correctly noted that Petitioner's testimony lacked detail. And given Petitioner's allegations, the IJ elicited valid and reasonable concerns about the improbability of (1) Petitioner's daughters not having received threats while continuing to live in Colombia, (2) Petitioner's failure to attempt to move or change her phone number after the threats began, and (3) the ELN's failure to follow through on its threats. See Al Najjar, 257 F.3d at 1287 (stating that alien must present "specific, detailed

7

facts" showing reasonable fear that she will be targeted for persecution on account of protected ground) (citations omitted).

Petitioner contends that, if the IJ was not satisfied with the level of detail she provided in her testimony, the IJ had a duty to elicit the necessary details. But Petitioner -- not the IJ -- bears the burden of proving eligibility for asylum. See 8 C.F.R. § 208.13(a).

Petitioner maintains that the INA does not require an asylum applicant to present corroborating evidence: the IJ erred in requiring her to present evidence corroborating her testimony. But when an alien presents testimony lacking in detail, the need for corroborative evidence is great. See In re Y-B-, 21 I&N Dec. 1136, 1139 (1998). And the only evidence Petitioner presented to corroborate her claims was the letter from the priest, which did not mention the threats to Petitioner. Petitioner argues that the priest did not mention the threats because he told Petitioner he was worried that his letter would end up in the ELN's possession. But Petitioner did not advance this position to the IJ: it is outside the scope of the evidence we may review. See 8 U.S.C. § 1252(b)(4)(A) (court of appeals may decide petition "only on the administrative record on which the order of removal is based").

8

Also, the Asylum Profile provided scant support for Petitioner's claims: that document indicated that religious-based asylum claims are rare. And while the Country Report stated that religious personnel often are threatened by guerillas, this does not compel a conclusion that Petitioner herself was threatened.

In sum, we affirm the denial of asylum relief and withholding of removal.[3]

PETITION DENIED.

---

[3] Substantial evidence supports the IJ's determination that Petitioner did not establish asylum eligibility: she offers no reason why she has met the higher standard for showing that the IJ's denial of withholding of removal was in error. See Al Najjar, 257 F.3d at 1292-93.