[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 24, 2005
THOMAS K. KAHN
CLERK

No. 04-15936
Non-Argument Calendar

_____

BIA No. A96-440-085

SAIQING CHIN,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(August 24, 2005)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Saiqing Chin petitions for review of the Board of Immigration Appeals'

order affirming the Immigration Judge's ("IJ") decision denying her petition for

asylum and withholding of removal under the Immigration Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhumane, and Degrading Treatment or Punishment ("CAT").[1] Substantial evidence supports the IJ's determination that Chin failed to demonstrate eligibility for asylum or withholding of removal. Accordingly, Chin's petition is DENIED.

## I. Background

Chin was born in 1982 in Fuzhou City, China. She testified that in April 2001, her parents borrowed approximately $10,000 from a local official in order to open a business. The business failed, and Chin's parents were unable to repay the debt. Chin testified that the official offered to forgive the debt if Chin married his son. Chin objected to the proposal, both because she did not want to be a "piece of merchandise" and because the official's son was "mentally retarded." Despite Chin's objections, her parents accepted the official's offer and arranged the marriage.

In April 2002, Chin ran away from her parents to the home of another relative. After about a week, her mother, accompanied by four village cadres,

---

[1] Because Chin's removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA"), this case is governed by the permanent provisions of the INA, as amended by IIRIRA.

came and took her home. Chin ran away again in June 2002, this time to her sister's home in Fuzcheng City. She stayed there for about two weeks, until her mother sent the cadres to take her home again.

Chin ran away to the city of Quanzhou in September 2002. She rented a room and found work with the help of a smuggler, known as a "snakehead." She remained in Quanzhou for three months. She testified that her parents borrowed $25,000 to pay half of the snakehead's fee for smuggling Chin to the United States, and that the remainder of the fee would be paid over time, in part from monies that Chin earned working in the United States.

Upon leaving Quanzhou, Chin traveled first to Thailand. She stayed in Thailand for about three months, then flew to Nepal, where she stayed for a week. From Nepal, she flew to India, where she stayed for another week before flying to Germany, changing planes and heading to Atlanta.

Once in Atlanta, Chin attempted to enter the United States under a visa waiver pilot program using a Singapore passport that was not her own. When immigration authorities in Atlanta questioned Chin about the passport, she admitted that she was a resident of China and stated that she wished to file for asylum.

On April 24, 2003, Chin submitted her application for asylum and

withholding of removal, citing past persecution and a fear of future persecution by local officials on account of her political opinion against arranged marriages. At her hearing, Chin argued that the local officials had persecuted her by attempting to force her into an arranged marriage and by returning her to her family when she ran away. She also claimed that she feared future persecution because her family owed a substantial amount of money and she thought she might be forced to go through with the arranged marriage. Finally, she claimed that she would face torture if returned to China because she left the country illegally.

The IJ denied Chin's petition, finding that Chin's claim was personal in nature and that she was an economic rather than political refugee. The IJ also found Chin's story regarding her parents' debt and resulting agreement to the arranged marriage "highly suspect" in light of the parents' ability and willingness to obtain the funds to pay the snakehead. The IJ went on to hold that, even if her claims were accepted as true, Chin could not establish refugee status under the INA because she could not establish past persecution or a well-founded fear of future persecution. Finally, the IJ held that Chin did not qualify for withholding of removal under the CAT because Chin could not demonstrate that she was likely to be persecuted or tortured upon being returned to China. In support of this holding, the IJ noted that first-time returnees to China generally suffer only a fine. The

4

Board of Immigration Appeals affirmed the IJ's decision without issuing an opinion.

## II. Discussion

A.  Standard of Review

The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ]'s decision if it is supported by reasonable, substantial, and probative evidence on the record as a whole." Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (internal quotation omitted).  In other words, we reverse the agency's decision only if "the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." I.N.S. v. Elias-Zacharias, 502 U.S. 478, 481, 112 S. Ct. 812, 815 (1992).   When the Board of Immigration Appeals affirms an IJ's order without opinion, the IJ's decision constitutes the final agency determination subject to review by this court.  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1285 n.2 (11th Cir. 2005).

B.  Asylum

An alien who arrives in, or is present in, the United States may apply for asylum.  INA § 208(a)(1), 8 U.S.C. § 1158(a)(1).  The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee."  8

U.S.C. § 1158(b)(1). A "refugee" is defined as

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of <u>persecution or a well-founded fear of persecution on account of</u> race, religion, nationality, membership in a particular social group**,** or <u>political opinion</u>.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (emphasis added). The asylum applicant carries the burden of proving statutory "refugee" status. <u>See</u> <u>Al Najjar</u>, 257 F.3d at 1284.

To establish asylum eligibility, the petitioner must, with specific and credible evidence, "establish (1) past persecution on account of her political opinion or any other protected ground, or (2) a 'well-founded fear' that her political opinion or any other protected ground will cause future persecution." <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1230-31 (11th Cir. 2005). If the petitioners demonstrate past persecution, they are presumed to have a well-founded fear of future persecution unless the government can rebut this presumption by showing a fundamental change in circumstances in the country or the ability to avoid future persecution by relocating within the country. <u>Antipova v. U.S. Att'y Gen.</u>, 257 F.3d 1262, 1264 (11th Cir. 2004). If the petitioners cannot

show past persecution, then they must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. See Al Najjar, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (internal quotation omitted). Although the INA does not expressly define "persecution" for purposes of qualifying as a "refugee," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda, 401 F.3d at 1231 (internal quotations omitted).

In order to establish the necessary causal connection between the political opinion and the feared persecution, the petitioner must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion." Id. (internal quotation omitted) (emphasis in original). Furthermore, we have approved of a "country-wide requirement" in which a refugee must first pursue an "internal resettlement alternative" in their own country, or establish that this is not possible, before seeking asylum here. Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1326-27 (11th Cir. 2001). Thus, in addition to establishing a "well-founded fear"

7

of persecution, the alien must also establish that the persecution could not be avoided by relocating within their country.

In this case, substantial evidence supports the IJ's finding that Chin did not suffer past persecution on account of her political opinion. Chin sets forth only two incidents in which the government allegedly persecuted her, and both of these incidents occurred when local officials, either accompanied by her mother or acting upon her mother's request, found Chin and took her home after she had run away to avoid an arranged marriage. It is not at all clear that this conduct rises to the level of persecution, nor is there any evidence of a causal link between the conduct and any political opinion, real or imputed, on the part of Chin.

Additionally, substantial evidence supports the IJ's finding that Chin failed to establish a well-founded fear of future persecution. We agree with the IJ that Chin's claimed fear of being forced to enter an arranged marriage to satisfy her parents' $10,000 debt is undermined by the fact that her parents were willing and able to obtain $25,000 to help Chin reach the United States, and that even if that were not the case, it is unlikely that the Chinese government would force Chin to enter and remain in an arranged marriage in order to satisfy her parents' debt. We also agree that Chin's concerns about the arranged marriage, even if legitimate, are not likely to persist country-wide. This is particularly so given Chin's testimony

that she lived and worked unmolested in Quanzhou for three months prior to her departure for the United States.

With respect to Chin's claim that she will be persecuted for illegally leaving China, the country reports cited in the IJ's opinion provide substantial support for the IJ's finding that first time returnees to China are generally only subjected to fines, not persecution or torture. Because Chin cannot demonstrate past persecution or a well-founded fear of future persecution, her petition for asylum was properly denied.

B.    Withholding of Removal

An alien is entitled to withholding of removal under the INA if she can show that her life or freedom would be threatened on account of her race, religion, nationality, membership in a particular social group, or political opinion. Sepulveda, 401 F.3d at 1232. When attempting to make this showing, the alien bears the burden of demonstrating that it is "more likely than not" that she will be persecuted or tortured upon being returned to her country. Id. Because this is a more stringent standard, "an applicant [who] is unable to meet the 'well-founded fear' standard for asylum . . . is generally precluded from qualifying for either asylum or withholding of deportation." Id. at 1232-33 (internal quotation omitted). Since Chin has failed to establish past persecution or a well-founded

fear of persecution sufficient to support her asylum claim, as discussed above, it logically follows that she cannot establish eligibility for withholding of removal under the heightened standard of the INA and the CAT.

Upon review of the record, and having considered the briefs of the parties, we discern no reversible error. Based on the foregoing, we deny the petition.

**PETITION DENIED.**