[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15745
No. 05-15747
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2006
THOMAS K. KAHN
CLERK

_____

BIA Nos. A78-311-070 & A78-311-071

SANDRA MERCEDES SARMIENTO-RODRIGUEZ
DIOMAR JESUS RODRIGUEZ-SANTIAGO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 25, 2006)**

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

Diomar Jesus Rodriguez-Santiago (Rodriguez) and Sandra Mercedes Sarmiento-Rodriguez, natives and citizens of Colombia, petition for review of the Board of Immigration Appeals' final order which adopted and affirmed the immigration judge's denial of their claims for asylum, withholding of removal under the Immigration and Nationality Act (INA), and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT).[1]  We deny the petition.

The petitioners contend that Rodriguez was persecuted by guerrillas and paramilitaries on account of his imputed political opinion.  They assert that the guerrillas imputed to Rodriguez an anti-guerrilla opinion because he would not cooperate with them.  They argue that the paramilitaries imputed to him a pro-guerrilla opinion because Rodriguez's home town is Teorama, which is known as a guerilla stronghold.  They say that although Rodriguez had resided in Bogota for seventeen years, paramilitaries would know that he is from Teorama because his national identity documents indicate that.  The petitioners allege that Rodriguez was subjected to verbal threats when he visited Teorama.

As an initial matter, in the petitioners' application for asylum, they asserted that Rodriguez was persecuted on account of political opinion, religion, and

_____

[1] The appeals of Rodriguez and his wife, Sandra Mercedes Sarmiento-Rodriguez, have been consolidated.

membership in a social group. However, in their petition to this Court they only argue that Rodriguez was persecuted on account of his imputed political opinion. Therefore, they have abandoned the arguments concerning religion and membership in a social group. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."). The petitioners also do not challenge the BIA's and IJ's denial of withholding of removal under the INA and denial of protection under the CAT, so they have abandoned those claims. See id.

When the BIA issues a decision, we review only that decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we review the IJ's decision as well." Id. In this case, the BIA expressly adopted the IJ's decision with regard to the denial of the petitioner's claims for asylum. Accordingly, we will review the IJ's decision. See Al Najjar, 257 F.3d at 1284.

To the extent that the IJ's and BIA's decisions were based on a legal determination, review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's and BIA's factual determinations are reviewed under the substantial evidence test, and we must affirm those decisions "if . . . supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). The

3

substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (quotations omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza, 327 F.3d at 1287.

As we have discussed, in the present case we will review only the asylum claims because the petitioners have waived the other ones. Based on Rodriguez's testimony, which the IJ found credible, as well as the other evidence in the record, the IJ denied Rodriguez's and his wife's claims for asylum. The IJ found that all of the problems about which Rodiguez testified occurred during his visits to Teorama, and nothing directly happened to him in Bogota, where he had resided for seventeen years. Therefore, the IJ concluded that Rodriguez and his wife had not demonstrated that they had a well-founded fear of persecution throughout Colombia.

An alien may be granted asylum if he meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

4

8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving refugee status.  See Al Najjar, 257 F.3d at 1284.

To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution.  8 C.F.R. § 208.13(a), (b).  "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a statutory factor, which in this case is Rodriguez's imputed political opinion.  Al Najjar, 257 F.3d at 1287 (citations and quotation marks omitted).  We have held that "[a]n imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA."  Al Najjar, 257 F.3d at 1289 (citations and quotation marks omitted).

"To qualify for withholding of removal based on persecution by a guerilla group on account of a political opinion, [a petitioner] must establish that the guerillas persecuted her or will seek to persecute her in the future because of her actual or imputed political opinion."  Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004).  In making that showing, "[i]t is not enough to show that [the petitioner] was or will be persecuted or tortured due to her refusal to cooperate

5

with the guerillas." Id.

An applicant who has not shown past persecution may be entitled to asylum if he can demonstrate a well-founded fear of future persecution based on a statutorily protected ground. 8 C.F.R. § 208.13(b). To establish a well-founded fear, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. If the BIA finds that the applicant could avoid a future threat by relocating to another part of his country, he cannot demonstrate a well-founded fear of persecution. See 8 C.F.R. § 208.13(b)(1)-(2); Mazariegos, 241 F.3d at 1327.

In the present case, substantial evidence supports the IJ's denial of asylum. The petitioners failed to establish that Rodriguez was singled out for persecution. The evidence showed that the paramilitaries generally harassed people and that the guerrillas generally harassed people who did not cooperate with them. See Al Najjar, 257 F.3d at 1287.

Also, the two threats Rodriguez received from the guerrillas over a two-year period did not rise to the level of persecution. See Sepulveda, 401 F.3d at 1231 ("[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation," and "mere harassment does not amount to persecution."). Those threats were isolated incidents of harassment rather than persecution. See id. Moreover, Rodriguez did not have problems with guerrillas

6

or paramilitaries while living in Bogota for seventeen years. Thus, the record shows that he could avoid persecution by living in Bogota, and the petitioners failed to establish that they could not relocate within Colombia. See Mazariegos, 241 F.3d at 1327.

The petitioners' argument that the guerrillas imputed to Rodriguez an anti-guerrilla political opinion because he refused to cooperate with them is without merit because refusing to cooperate with guerrillas does not constitute a political opinion. See Sanchez, 392 F.3d at 438. Therefore, the petitioners failed to establish that Rodriguez was persecuted on a protected ground.

**PETITION DENIED.**