[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 16, 2006
THOMAS K. KAHN
CLERK

No. 05-16700
Non-Argument Calendar
_____

Agency Nos. A95-263-345
A95-263-346

AFTIMIO ALFREDO PINEDA-PRENCKE,
MILDRED AMINTA TINOCO-VIANA,
ALFREDO ENRIQUE PINEDA-TINOCO,
WENDY PAOLA PINEDA-TINOCO,
NICOLE ANDREA PINEDA-TINOCO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 16, 2006)

Before ANDERSON, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Aftimio Alfredo Pineda-Prencke, on his own behalf and on behalf of his wife, son, and two daughters as derivative applicants,[1] petitions for review of the Board of Immigration Appeals's ("BIA") order affirming with an opinion the Immigration Judge's ("IJ") determination denying him asylum and withholding of removal under the Immigration Nationality Act ("INA").[2] On appeal, Pineda-Prencke argues that substantial evidence supports a finding of persecution by the National Liberation Army ("ELN") because of his political aspirations and his community activities. Moreover, Pineda-Prencke argues that he can not safely relocate in Colombia and more likely than not would be persecuted if he returned to Colombia because the ELN's threats were consistent and continuous and included threats against his son when he returned to Colombia because the ELN wanted to make Pineda-Prencke pay for his debts.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Najjar v. Ashcroft, 257 F.3d

---

[1] Family members are "derivatives" as that term is used in 8 C.F.R. § 207.7 and will be granted asylum if Pineda-Prencke is granted asylum. See also 8 U.S.C. § 1158(b)(3)(A)(stating that "[a] spouse or child of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien") (internal citations omitted).

[2] It is clear from the issue on appeal and the law cited in Pineda-Prencke's appellate brief that he is only arguing the denial of his asylum and withholding of removal under the INA and does not challenge the dismissal of his withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). (See generally appellants' brief). His claim under CAT is thus deemed waived.

1262, 1284 (11th Cir. 2001). Thus, we will review the BIA's and IJ's factual determinations under the substantial evidence test, and must affirm the decisions if "supported by reasonable, substantial, and probative evidence on the record as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation omitted).

An alien who arrives in, or is present in, the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is defined as

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (emphasis added). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284.

To establish asylum eligibility, the petitioners must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, such as political opinion or (2) a "well-founded fear" that the statutorily

3

listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. If the petitioners demonstrate past persecution, they are presumed to have a well-founded fear of future persecution unless the government can rebut this presumption by showing a fundamental change in circumstances in the country or the ability to avoid future persecution by relocating within the country. 8 C.F.R § 208.13(b)(1). If the petitioners cannot show past persecution, then they must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. See Al Najjar, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation omitted).

Although the INA does not expressly define "persecution" for purposes of qualifying as a "refugee," see 8 U.S.C. § 1101(a)(42), we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U. S. Atty. Gen., 401 F.3d 1226, 1231 (11th Cir. 2004) (quotations omitted).

"To establish the necessary causal connection between the political opinion and the feared persecution, the alien must present specific, detailed facts showing a

good reason to fear that he or she will be <u>singled out</u> for persecution on account of such an opinion." <u>Sepulveda</u>, 401 F.3d at 1231 (quotation omitted) (emphasis in original). Furthermore, we have approved of a "country-wide requirement" in which a refugee must first pursue an "internal resettlement alternative" in their own country, or establish that this is not possible, before seeking asylum here. <u>Mazariegos v. U.S. Atty. Gen.</u>, 241 F.3d 1320, 1326-27 (11th Cir. 2001).

Moreover, an alien is entitled to withholding of removal under the INA if he or she can show that his or her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. <u>Mendoza v. U.S. Atty. Gen</u>, 327 F.3d 1283, 1287 (11th Cir. 2003); <u>see also</u> INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). As a general rule, however, if "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." <u>Al Najjar</u>, 257 F.3d at 1292-93 (quotation omitted).

Upon review of the record and the parties' briefs, we discern no reversible error. In this case, substantial evidence supports the BIA's and IJ's findings that Pineda-Prencke did not suffer past persecution on account of his political opinion, and thus, was not eligible for asylum on that basis. Pineda-Prencke sets forth the following incidents in which the ELN threatened him either by telephone or mail:

5

(1) when he worked for the telephone company; (2) when the ELN sabotaged the event he organized on behalf of the community and vandalized his car; (3) when he made known his aspirations to run for city councilman; (4) when the ELN placed a sand cross in front of his home, flattened four tires on his car, and told him that the cross represented his and his family's graves; and (5) when his son and daughter were robbed upon their return to Colombia from the United States and his son received a telephone call from the ELN threatening him.

All of the incidents alleged by Pineda-Prencke, either individually or as whole, are distressing, but do not amount to persecution under the statute because they only involved threats with a few incidents of vandalism, and persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation. See Sepulveda, 401 F.3d at 1231. Moreover, neither Pineda-Prencke nor any of his family members were ever physically harmed. Also, the connection between some of the alleged incidents and the ELN is tenuous. For example, Pineda-Prencke failed to present evidence establishing that the robbery of his two older children was connected with ELN threats, rather than just a random act of violence. Moreover, the threats his older son received occurred several months after the robbery and never referred to the incident. Also, Pineda-Prencke failed to present any evidence that he had openly expressed a political opinion

6

against the ELN or any other guerrilla organization. Neither his work with the telephone company nor his donating shoes to the police involved expressing any political opinions, and the only reason the ELN threatened him was because they did not want a telephone system installed that might make the police more accessible and because they mistakenly perceived the police presence at his shoe business as a clue that he was an informant. Moreover, when Pineda-Prencke worked for Solidarity and the Center for Higher Studies ("CES"), he did not express any political opinion, rather, he was either helping to improve the infrastructure of the community or organizing events for the residents. The only incident possibly related to Pineda-Prencka expressing his political opinion was when he made known his aspirations to run, for city council, which he ultimately did not do, and at no time, while he was deciding whether to run, did he express any opinion as to the ELN. Thus, Pineda-Prencke failed to connect the incidents to any substantial political activity and as a result, he failed to establish that he suffered past persecution on account of his political opinion.

Likewise, substantial evidence supports the IJ's finding that Pineda-Prencke failed to establish a well-founded fear of future persecution in Colombia. As stated above, neither Pineda-Prencke nor his family were harmed prior to moving to the United States. Moreover, Pineda-Prencke failed to establish that the police

were unable or unwilling to protect him and his family, Pineda-Prencke only filed a police report on one occasion and he never followed up with them. Additionally, even though the most recent country report from 2002 stated that the ELN is the second largest guerilla force in Colombia, the report also asserted that the ELN proclaimed support for peaceful resolutions, and since ELN's terrorist and criminal activities often affected civilians indiscriminately, the group had negligible popular support. Lastly, Pineda-Prencke never attempted to relocate internally, rather he moved to a different address within the same city. See Mazariegos, 241 F.3d at 1326-27. Pineda-Prencke relies on the 2002 United Nations High Commissioner for Refugees ("UNHCR") report and the INS's reply to an inquiry about relocating in Colombia for the proposition that it was not viable for him to relocate within Colombia,. However, the UNHCR report specifically referred to those asylum seekers who faced a serious risk of persecution as outlined under the CAT[3] and the

---

[3] To obtain relief under the CAT, the burden is on the applicant to establish that it is "more likely than not" she will be tortured in the country of removal. 8 C.F.R. § 208.16(c)(2). Torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). To constitute torture, an act must be specifically intended to inflict severe

INS's inquiry referred to asylum seekers who were specifically targeted not by one guerrilla group, as Pineda-Prencka was, and were consequently subject to threats from multiple groups located throughout Colombia. (See AR at 258-61).

Because Pineda-Prencke failed to establish past persecution or a well-founded fear of future persecution sufficient to support his asylum claim, as discussed above, he cannot establish that he is eligible for withholding of removal under the INA. See Al Najjar, 257 F.3d at 1292-93. Thus, Pineda-Prencke failed to meet the burden of proof required for asylum and withholding of removal relief. Based on the foregoing, we deny his petition.

PETITION DENIED.

---

physical or mental pain or suffering. 8 C.F.R. § 208.18(a)(5).