[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 11, 2006
THOMAS K. KAHN
CLERK

No. 05-17099
Non-Argument Calendar

_____

Agency Nos. A95-885-357
A95-885-358

PAOLA LORIS TRUJILLO JABBA,
YAMAL SAID EL-HAGE AHMED,
SAID GUILLERMO EL-HAGE TRUJILLO,
TANIA MARGARITA TRUJILLO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 11, 2006)

Before EDMONDSON, Chief Judge, DUBINA and HULL, Circuit Judges.

PER CURIAM:

In this consolidated case, Paolo Loris Trujillo Jabba ("Jabba"), her husband Yamal Said El-Hage Ahmed, their son Said Guillermo El-Hage Trujillo, and her sister Tania Magarita Trujillo ("Trujillo"), natives and citizens of Colombia,[1] petition for review of the adoption and affirmance by the Board of Immigration Appeals ("BIA") of the decision of the Immigration Judge ("IJ"). The decision denied asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").  No reversible error has been shown; we deny the petition.

We review the decisions of the IJ and the BIA in this case.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well").  An IJ's factual determination that an alien is not entitled to asylum "must be upheld if it is supported by substantial evidence." Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001).  "Under this highly deferential test, we affirm the IJ's decision if it is supported by reasonable,

_____

[1] Jabba included her husband and son as derivatives in her asylum application; so our decision about Jabba also applies to her husband and son.  Trujillo filed an asylum application separate from Jabba.  But their removal proceedings were consolidated because their asylum applications were based on the same facts.

substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotation and alteration omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien may obtain asylum if she is a "refugee": a person unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion and membership in a particular social group. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). Therefore, an asylum applicant may not show merely that she has a political opinion; but she must show that she was persecuted because of that opinion. INS v. Elias-Zacarias, 112 S.Ct. 812, 816 (1992). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence.[2] Al Najjar, 257 F.3d at 1284.

In their asylum applications, Jabba and Trujillo stated that their father owned a food supply business in Colombia. In 1996, their father accepted money from investors; and he later learned that these investors were involved with the

---

[2]We have noted that "only in a rare case does the record compel the conclusion that an applicant for asylum suffered past persecution or has a well-founded fear of future persecution." Silva v. U.S. Attorney Gen., 448 F.3d 1229, 1239 (11th Cir. 2006).

3

Revolutionary Armed Forces of Colombia ("FARC"), a guerilla organization, and drug traffickers, who were engaging in money laundering. Jabba and Trujillo asserted that, when their father informed the investors that he wished to return their money, the guerillas and drug traffickers made death threats against him. Their father eventually returned the investors' money; but he continued to receive threats from people warning him to "remain silent." After their father died,[3] "narco-guerilla henchmen" began to threaten Jabba and Trujillo and their mother with death. Jabba testified that she and her family continued to receive threats because the investors did not want her family to report the investors' conduct.

Jabba and Trujillo argue that the IJ erred in finding that they had not presented sufficient credible evidence to show past persecution or a reasonable fear of future persecution based on the threats that their family had received. They assert that their persecution was on account of their membership in a particular social group, specifically persons who have witnessed criminal activity, and their imputed political opinion. But substantial evidence supports the determination that Jabba and Trujillo failed to meet their burden that they had been persecuted, or that they faced a well-founded fear of future persecution, on a protected ground.

---

[3] Jabba and Trujillo explained that their father died from an intestinal condition, which they claim was exacerbated by the stress of receiving death threats.

Jabba and Trujillo have not identified themselves as members of a protected social group. See Castillo-Arias v. U.S. Attorney Gen., 446 F.3d 1190, 1198 (11th Cir. 2006) (rejecting the claim that noncriminal informants in Colombia are a protected social group and explaining that "[t]he risk of persecution alone does not create a particular social group [under] the INA, as virtually the entire population of Colombia is a potential subject of persecution by the cartel"). Persons demonstrating persecution based on their membership in a social group are people with "a shared characteristic such as sex, color, or kinship ties, or in some circumstances a shared past experience such as former military leadership or land ownership." Id. at 1193, 1196 (internal quotation and alteration omitted). In addition, the shared characteristic "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Id. (internal quotation omitted). Jabba and Trujillo have not identified themselves as members of a social group that meets these requirements. See id. at 1198 (noting that membership in a particular social group "should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere").

On the claim that Jabba and Trujillo were persecuted because of their imputed political opinion, the evidence presented shows that their alleged

5

persecution resulted from their father's involvement with investors connected to the FARC and drug traffickers.  The record does not compel the conclusion that the alleged persecution that Jabba and Trujillo suffered was because of a political opinion imputed to them.

Substantial evidence also supports the conclusion that Jabba and Trujillo failed to show a well-founded fear of future persecution based on a protected ground.  They have not shown that, upon return to Colombia, they will be "singled out" for persecution on account of a protected ground.  See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) ("The applicant must also establish a causal connection between the political opinion and the feared persecution, presenting specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion.") (internal quotation omitted).

Therefore, the evidence does not compel us to conclude that Jabba and Trujillo are eligible for asylum.  Because they have not satisfied the less stringent standard for asylum, we also deny their petition for review of claims for withholding of removal and for CAT relief.  See Zheng v. U.S. Attorney Gen., 451 F.3d 1287, 1292 (11th Cir. 2006).

PETITION DENIED.