[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 19, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13967
Non-Argument Calendar

_____

BIA Nos.
A95-263-153 & A97-192-075

MARCO ANTONIO ROJAS-IRIARTE,
MARCELA GOMEZ BLANCO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 19, 2007)**

Before TJOFLAT, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Petitioners Marco Antonio Rojas-Iriarte (Rojas) and Marcela Gomez-Blanco

(Gomez), his wife, are natives and citizens of Colombia, S.A. Rojas was admitted to the United States on March 17, 2002, as a non-immigrant student to attend Atlanta English Institute (AEI). On March 27, 2002, he filed an application for asylum and withholding of removal.[1] On May 23, 2002, he received a Notice to Appear, which alleged that he had not attended AEI, a condition of his non-immigrant status, and thus was subject to removal under section 237(a)(1)(C) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(C). On September 28, 2002, Gomez was admitted to the United States as a non-immigrant visitor with permission to remain until March 27, 2003. On March 28, 2003, she applied for asylum and withholding of removal. She received a Notice to Appear on May 28, 2003, which alleged that she was subject to removal because she had remained in the United States for a period longer than authorized. Id.

At their initial appearances before an Immigration Judge (IJ), petitioners conceded removability. Their cases were then consolidated, and on December 22, 2004, an IJ held an evidentiary hearing on their applications for asylum and withholding of removal. At the conclusion of the hearing, the IJ denied their applications. They appealed the IJ's decisions to the Board of Immigration

---

[1] Rojas also sought withholding relief under the U.N. Convention Against Torture (CAT). Gomez did likewise. Both were denied such relief. In their petitions to this court, neither petitioner challenges the denial and thus are deemed to have abandoned any objection they may have had to the CAT rulings.

Appeals (BIA), and on April 13, 2005, the BIA affirmed the IJ's decisions without opinion. On May 11, 2006, petitioners moved the BIA to reconsider its ruling, and on June 22, 2006, the BIA granted their motions, vacated its April 13, 2005 decision, and issued a new decision affirming the IJ's denials of asylum and withholding of removal. Rojas and Gomez now petition this court for review.

When the BIA issues a decision, we review only that decision, "except to the extent that the BIA expressly adopts the IJ's" decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, although the BIA did not expressly adopt the IJ's decision, it relied on the IJ's reasoning and did not present any additional analysis or bases for affirming the IJ. Therefore, we review both the BIA and the IJ's decisions. "To the extent that the BIA's [and the IJ's] decision was based on a legal determination, this court's review is de novo." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). Factual determinations are reviewed under the substantial evidence test, and we must affirm the BIA's and IJ's findings of fact "if [they are] supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (citation and quotations omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (quotations omitted). "To reverse the . . . fact findings, we must find that the record

3

not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General (whose decision in this matter is deemed the product of the Department of Homeland Security) has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b). "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a statutory factor. Al Najjar,

4

257 F.3d at 1287 (quotations and citation omitted).

To qualify for withholding of removal under the INA, an alien must show that if removed, his or her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3); 8 U.S.C. § 1231(b)(3). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287. If an alien is unable to meet the standard of proof for asylum, the alien is generally precluded from qualifying for withholding of removal. Al Najjar, 257 F.3d at 1292-93.

If the alien establishes past persecution, it is presumed that the alien's life or freedom would be threatened upon a return to that country. 8 C.F.R. §§ 208.13(b), 208.16(b). An alien who has not shown past persecution may still be entitled to asylum or withholding of removal by demonstrating a future threat to his or her life or freedom on a protected ground in his or her country. Id. §§ 208.13(b)(2), 208.16(b)(2). To establish a "well-founded fear," "an applicant must demonstrate that his fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289 (discussing well-founded fear as it applies to asylum). Also, as with past persecution, if the BIA finds that the alien could avoid a future threat by relocating to another part of his country, the alien cannot demonstrate a well-founded fear of persecution. See 8 C.F.R. §§ 208.13(b)(1)-(2), 208.16(b)(1)-

5

(2); Mazariegos, 241 F.3d at 1327. "Not all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000). "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation," and "mere harassment does not amount to persecution." Sepulveda v. Attorney General, 401 F.3d 1226, 1231 (11th Cir. 2005).

The IJ and BIA based their decisions for the most part on the evidence presented to the IJ at the December 22, 2004 hearing on their applications for asylum and withholding of removal. Rojas was the first witness to testify. He said that he first entered the United States in 1981 for a vacation. He reentered the United States four more times: on March 6, May 14, and October 10, 2001, and on March 17, 2002. He came here on March 6 because he was "running away from the threats" against his family. He came on a student visa to study at Georgia Tech. He studied there for eight months, then returned to Colombia on December 16, 2001 to marry Gomez. When faced with what he stated in his asylum application, he admitted that he had returned to Colombia twice between March 6 and December 16, 2001. He returned to Colombia on May 4, to help Gomez, and again on September 27 to help her get a "permit to the United States" through Georgia Tech. He remained in Colombia from December 16, 2001 to March 17, 2002, to "start all over with my life" before marrying Gomez (on March 8, 2002, nine days before his latest entry into the United States).

On March 14, 2002, he experienced what he described as a "murder attempt." He and Gomez were on honeymoon in a Cartagena hotel (where he happened to be employed). Four armed men, identifying themselves as "Colombian armed forces," entered the hotel and asked for him. The clerk said he was not there. A hotel employee went to their room and told them about the men looking for Rojas. Rojas and Gomez then hid on the hotel roof, until the men departed. They left without further incident. Rojas opined that the men were going to murder him for his political activities and because he was the son of a high ranking naval officer. He was convinced that "they will murder me" if he is returned to Colombia because they tried once before (when he and Gomez were on honeymoon).

On cross-examination, Rojas testified that his parents continued to live in Colombia. His father, who had "his own bodyguards," did not want to leave the country. Rojas brother and sister left Colombia in 2000 and never returned.

The IJ stated that he was troubled by the fact that Rojas had returned to Colombia three times during the period he claimed that he feared for his life. The IJ acknowledged that Rojas's sister had been granted asylum and that he did not like to make "inconsistent" decisions within the same family. The IJ concluded that denying Rojas asylum would not be inconsistent, however, because his repeated trips back to Colombia (from the United States) distinguished his case

7

from his sister's.[2]

Gomez testified about two incidents she experienced in Colombia. The first was the murder attempt of March 14, 2002, which Rojas had described. The second incident occurred on August 24, 2002. She was "hiding" in Fresno, Tellima because Rojas had gone to the United States. "They [presumably the men who had come to the hotel on March 14] wanted to find me." "The day after the [March 14] attempt in Cartagena, they left a message at my office in Bogata . . . that they were going to find me as they have not found my husband." She was convinced that the "guerillas if they find us again, I don't think we're going to run with the same good luck and this time they will murder us."

After hearing petitioners' testimony, the IJ found no issue as to credibility, and believed that Rojas had "suffered some threat" because of his and his father's political activity. Nonetheless, the incidents Rojas and Gomez described did not, in the IJ's view, amount to persecution. Neither were "physically harmed in any way."

We agree with the IJ and BIA that the alleged incidents of persecution were isolated incidents of verbal harassment or intimidation, which do not rise to the level of persecution. At most, these incidents were mere threats; Rojas was never

_____

[2] Rojas's brother had applied for asylum, but, according to Rojas's attorney, the application had been denied.

harmed and Gomez remained in Colombia for six months without incident after the threats were made. See Sepulveda, 401 F.3d at 1231. In addition, Rojas's parents continue to live there, albeit with bodyguards. More telling, though, was the fact Rojas continued to return to Colombia despite the threats. His repeated returns to Colombia not only undermined petitioners' claims of past persecution, but demonstrates that the petitioners did not have an objective well-founded fear of future persecution. Therefore, the evidence in the record does not compel a reversal of the IJ's and BIA's denial of their petition. Because the petitioners have failed to meet the lower burden of proof for asylum, they necessarily fail to meet the higher burden of proof for withholding of removal. Al Najjar, 257 F.3d at 1292-93.

In conclusion, after careful review of the record and the parties' briefs, we conclude that substantial evidence supports IJ's and BIA's decisions and that the petitions should be denied.

PETITIONS DENIED.