[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 9, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14141
Non-Argument Calendar

_____

BIA Nos. A97-191-793 & A97-191-794

BRUNET VALESCOT,
MARIE BEATRICE PIERRE,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 9, 2007)

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Lead petitioner, Brunet Valescot, and his wife, Marie Beatrice Pierre, both natives and citizens of Haiti, petition this Court to review the final order of the Bureau of Immigration Appeals ("BIA") affirming the denial of their claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[1] Petitioners argue the BIA erred by affirming the denial of their asylum petition based on Valescot's past persecution on account of an imputed political opinion or membership in a particular social group.[2] Valescot contends that he suffered past persecution by agents of the Haitian government, based on an imputed political opinion and membership in a particular social group, all based on his membership in a group he

---

[1]    Petitioners do not raise any challenge in their brief to the denial of withholding of re-moval or relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), and thus have abandoned these claims. When an appellant fails to offer argument on an issue, that issue is abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

[2]    To the extent Petitioners challenge the standard of proof applied by the immigration judge, we lack jurisdiction to consider this claim since Petitioners did not raise it before the BIA and accordingly have not exhausted it. See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1) (providing that this Court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as a matter of right."); see also Fernandez-Bernal v. Attorney General of the U.S., 257 F.3d 1304, 1317 n. 13 (11th Cir. 2001) (observing that party's failure to raise an issue before the BIA means that this Court does not have jurisdiction to consider that issue). Accordingly, we DISMISS the appeal as to this claim. We are satisfied, however, that Petitioners' arguments, before both the IJ and the BIA, that Valescot was the target of "political reprisal," "political assassins," and a "politically motivated assassination" preserved the issue of past persecution based on imputed political opinion or membership in a social group, and we therefore have jurisdiction to consider that claim.

2

defines as "former police officers targeted by government thugs." After careful review, we affirm.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, although the BIA did not expressly adopt the IJ's decision, it relied on the IJ's reasoning and did not present any additional analysis or bases for affirming the IJ. Therefore, we review both the BIA and the IJ's decisions. To the extent that those decisions were based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). Factual determinations are reviewed under the substantial evidence test, and we must affirm the BIA's and the IJ's findings of fact "if [they are] supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (citation and quotations omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir.2001) (quotations omitted). Rather, "[t]o reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

In his application for asylum, Valescot, who formerly was a police officer in Haiti, asserted that following his involvement in a murder investigation that implicated a high-ranking government official, his home was ransacked, his computers were broken, and his neighbors were questioned about his whereabouts. The immigration judge ("IJ") concluded that Valescot's testimony was credible and consistent with his asylum application materials. The IJ also considered the declaration of Valescot's neighbor.

The record also contained an Amnesty International Report, dated June 28, 2004, and a U.S. State Department Press Statement, dated October 12, 2004, on violence in Haiti. The Amnesty International Report describes ongoing conditions of violence and unrest in Haiti and states that the Haitian National Police have been "plagued by politicization, corruption and mismanagement." The Report also says that police stations have been "attacked, ransacked and burned down and police officers [have been] killed or [have] simply fled." The attacks have led to a break-down of the police force and allowed insurgents to take over the police function in some areas. Political violence increased during the presidencies of Rene Preval and Jean Bertrand-Aristide, and "the official police force responded with heightened politicization among its ranks . . . ." The Press Statement says that "pro-Aristide thugs" had "murdered policemen, looted businesses and public installments, and terrorized civilians." The Statement further expresses the United

4

States government's commitment "to assist the rebuilding and reform of the Haitian National Police."

After consideration of Valescot's testimony and the other submitted materials, the IJ concluded:

> The problems that [Valescot] had in Haiti arose in a general sense out of the scope of [his] employment as a police officer in the Haitian national police in Haiti, and in a more specific sense, out of an investigation that he initiated into the death of a student leader, which implicated a high ranking government official. While what happened to Valescot was clearly unfortunate, it appears to have occurred during the time that he was an active member of the police force in Haiti. As such, I cannot find in this case that [Valescot's] problems were as a result of his political opinion. Rather, they appear to have arisen from the nature of his employment as a police officer.

Accordingly, the IJ denied Petitioners' applications and the BIA subsequently affirmed. This petition for review followed.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is any person who is unwilling to return to her home country or to avail himself of that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A).

5

The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284; 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that her statutorily listed factor will cause future persecution. Al Najjar, 257 F.3d at 1287; 8 C.F.R. § 208.13(a), (b). "To establish asylum based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (citations omitted). We have recognized that persecution is an "extreme concept," which "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (citations omitted).

In order to show eligibility for asylum based on political opinion, the petitioner must show that the persecution has taken place or will take place because of his political opinion, not the persecutor's. INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992). A petitioner also may qualify for political-opinion asylum if he can show that he was persecuted because of an opinion that the persecutor attributed to him. Al Najjar, 257 F.3d at 1289.

6

Members of a particular social group share a common, immutable characteristic. Castillo-Arias v. United States Attorney General, 446 F.3d 1190, 1196 (11th Cir. 2006), cert. denied, No. 06-642 (Jan. 8, 2007). However, that alone is not sufficient to establish a social group for purposes of asylum protection. Id. at 1197. Although former police officers may qualify, in certain circumstances, for asylum protection as members of a particular social group, the general rule is that "those who engage in risks similar to those of the police or military, do not receive protection as a particular social group under the INA." Id. at 1198 (emphasis added).

Here, substantial evidence supports the BIA's finding that Valescot did not suffer persecution on account of imputed political opinion or membership in a particular social group. First, the IJ and the BIA reasonably could have concluded that the isolated incidents, which followed Valescot's involvement in a police investigation, related to Valescot's work rather than a political opinion and thus that any alleged persecution was not "on account of a protected ground." Silva, 448 F.3d at 1236. Second, to the extent that Valescot's status as a former police officer accorded his statutorily protected membership in a social group, the IJ and the BIA found that the incidents Valescot described resulted solely from his involvement in a particular police investigation and were not attributable, in a more general sense, to his membership in a police organization. Moreover, the IJ and

7

the BIA concluded that the incidents were isolated in nature, and did not rise to the level of extreme mistreatment required for a finding of past persecution. On this record, we cannot say that this finding was unreasonable.[3] Accordingly, we deny the petition for review as to this claim.

**PETITION DENIED IN PART, DISMISSED IN PART**.

---

[3] On appeal, Petitioners raise no arguments concerning the BIA's conclusion concerning future persecution -- that any fear of future harm was based on Valescot's police work rather than political opinion or membership in a particular social group. In any event, our review of the record has revealed no evidence to compel a contrary conclusion.