[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 22, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14099
Non-Argument Calendar
_____

Agency No. A96-439-346

JOSEPH TANRI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 22, 2007)**

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Joseph Tanri, a native and citizen of Indonesia, petitions this Court to review

the final order of the Board of Immigration Appeals ("BIA") adopting and

affirming the Immigration Judge's ("IJ's") denial of his application for asylum

and withholding of removal under the Immigration and Nationality Act ("INA") and relief under United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. The IJ determined that Tanri's asylum petition was barred as a matter of law because it was untimely and Tanri had failed to establish an exception to excuse the untimely filing. In this petition for review, Tanri argues that the BIA erred by affirming the IJ's order because (1) he established changed or extraordinary conditions exempting him from the INA's requirement that an asylum application must be filed within one year of an alien's arrival; and (2) he satisfied his burden of proof to establish his eligibility for asylum and withholding of removal due to past persecution and a well-founded fear of future persecution based on his Chinese ethnicity and Christian religious beliefs. After careful review, we dismiss the petition in part and deny it in part.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ''s decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA adopted the IJ's decision, and made some findings of its own, we will review both. To the extent that those decisions were based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). Factual determinations are reviewed under the substantial evidence test, and we must affirm the BIA's and the IJ's findings of fact "if [they are] supported by

2

reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (citation and quotations omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). Rather, "[t]o reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc).

Even if we ultimately lack subject-matter jurisdiction over a petition for review, we retain jurisdiction to determine whether or not subject-matter jurisdiction exists. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). We review "questions of subject matter jurisdiction de novo." Id.

The REAL ID Act provides that we retain jurisdiction over "constitutional claims or questions of law raised upon a petition for review. . ." regardless of the bars created by 8 U.S.C. § 1252(a)(2)(B) or (C). 8 U.S.C. § 1252 (a)(2)(D).

An asylum application must be "filed within [one] year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An untimely application "may be considered . . . if the alien demonstrates . . . either the existence of changed circumstances which materially affect the applicant's

3

eligibility for asylum or extraordinary circumstances relating to the delay in filing an application . . ." 8 U.S.C. § 1158(a)(2)(D). The determination of whether an alien can apply for asylum, however, is left exclusively to the Attorney General, meaning that we do not have jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing. Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956-957 (11th Cir. 2005). Moreover, the timeliness of an asylum application is neither a constitutional claim nor a question of law covered by the REAL ID Act's grant of jurisdiction for "constitutional claims or questions of law." Id. at 957.

In the instant case, we do not have jurisdiction to review the IJ's determination that Tanri's asylum application was untimely. Tanri entered the United States on October 30, 1999, but did not file an asylum application until January 26, 2004, which was well beyond the one-year limitations period. We also lack jurisdiction to review an IJ's determination of whether changed circumstances excuse the untimely filing of an asylum application. Id. The IJ's determination of an application's timeliness (and the BIA's affirmance of that determination) is non-reviewable and is not a constitutional claim or a reviewable question of law.[1]  Id.

---

[1]We are unpersuaded by Tanri's argument that the IJ's untimeliness determination was a violation of his due process rights, and, thus a reviewable legal or constitutional question. First, Tanri does not show how the IJ ignored its own law in finding that his application was untimely.

4

Accordingly, we lack jurisdiction and must dismiss the petition for review as to the asylum claim.

We likewise are unpersuaded by Tanri's argument that he is entitled to withholding of removal. "An alien seeking withholding of removal under the INA must show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Mendoza, 327 F.3d at 1287. An alien bears the burden of demonstrating that it is more likely than not that he would be persecuted or tortured upon his return to the country in question. Id. If the alien establishes past persecution in his country based on a protected ground, it is presumed that his life or freedom would be threatened upon return to his country unless the government shows by a preponderance of the evidence that, among other things, (1) the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon his removal or (2) that the alien could avoid a future threat to his life or freedom by relocating to another part of the proposed country of removal, and it would be reasonable to expect him to do so. Id.

An alien who has not shown past persecution, though, may still be entitled to withholding of removal if he can demonstrate a "well-founded fear" of persecution

---

Second, Tanri does not argue that the IJ's untimeliness determination deprived him of a full and fair hearing. Finally, an IJ's untimeliness determination is not a constitutional claim or a question of law. Thus, we will not consider Tanri's argument that he is entitled to asylum.

on a protected ground if he returns to his country. Al Najjar, 257 F.3d at 1289. To establish a well-founded fear, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Id. "Demonstrating such a connection requires the alien to present 'specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution' on account of such an opinion." Id. at 1287. An alien may also sustain his burden of proof by showing a pattern or practice of persecution of a group similarly situated to him in which he is included or with which he is identified. 8 C.F.R. § 208.16(b)(2).

We have recognized that persecution is an "extreme concept," which "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (citations omitted). Moreover, "[n]ot all exceptional treatment is persecution." Id.

Here, substantial evidence supports the IJ's and BIA's determinations that Tanri was not entitled to withholding of removal. Tanri's testimony did not compel a finding of past persecution or a well-founded fear of future persecution. The IJ reasonably determined that both the 1985 and August 1998 incidents during which native Indonesians accosted Tanri for money and his motorcycle constituted mere harassment. Likewise, the fear that Tanri described that he experienced when

6

masses of Indonesian natives entered his office building did not rise to the level of the "extreme concept" of persecution; no physical harm resulted from this encounter, and the intruders never actually confronted Tanri himself. On November 22, 1998, Indonesian native youths screamed threats at Tanri after he fled his church. The IJ and the BIA determined that these were mere threats that did not amount to past persecution. In short, the IJ and the BIA reasonably could have found that the incidents Tanri described constituted "isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." Id. Accordingly, the IJ and the BIA reasonably could have concluded that Tanri's evidence did not meet the "extreme concept" of persecution required for withholding of removal.

Moreover, substantial evidence shows that Tanri did not establish a well-founded fear of future persecution. The State Department's 2004 Country Report indicated that instances of discrimination against the Chinese had declined compared to previous years. Although several churches had been burned down in 2004, according to the Country Report, Protestantism and Catholicism were recognized religions in Indonesia. The IJ concluded that the isolated events described by Tanri did not satisfy the more-likely-than-not standard for withholding of removal based on a well-founded fear of future persecution. We

7

cannot say the record <u>compels</u> the opposite conclusion, and accordingly, we must

deny the petition as to the withholding-of-removal claim.

**DISMISSED IN PART, DENIED IN PART.**