[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 13, 2008
THOMAS K. KAHN
CLERK

----------------------------------------

No. 07-11770
Non-Argument Calendar

----------------------------------------

Agency Nos. A95-899-984
A95-899-985

JOSE EDUARDO RUIZ,
ISABEL GRACIELA AVILES DE RUIZ,
VERONICA ESTHER RUIZ,
FRENANDA RUIZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

----------------------------------------
Petition for Review of a Decision of the
Board of Immigration Appeals
----------------------------------------

**(February 13, 2008)**

Before EDMONDSON, Chief Judge, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Jose Eduardo Ruiz, his wife Isabel de Ruiz, and their minor children Veronica and Fernanda Ruiz, natives and citizens of Peru,[1] petition for review of the affirmance by the Board of Immigration Appeals ("BIA") of the decision of the Immigration Judge ("IJ"). The decision denied asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). No reversible error has been shown; we dismiss the petition in part and deny it in part.

We first must determine to what extent we have jurisdiction over Ruiz's petition. Chacon-Botero v. U.S. Attorney Gen., 427 F.3d 954, 956 (11th Cir. 2005) (we are "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking"). On appeal, Ruiz argues that he demonstrated changed circumstances to excuse his untimely asylum application and otherwise makes arguments about his eligibility for asylum. But we do not have jurisdiction to consider Ruiz's asylum claims because the IJ and the BIA concluded that his asylum application was untimely and that he failed to demonstrate an exception to the filing deadline contained in 8 U.S.C. § 1158(a)(2)(B). Chacon-Botero, 427

---

[1]Ruiz included his wife and children as derivatives in his asylum application; so our decision about Ruiz also applies to them.

F.3d at 957 (we lack jurisdiction, under section 1158(a)(3), to review an IJ's timeliness ruling).

Ruiz also argues that the IJ erred in denying him CAT relief. But we lack jurisdiction to consider this claim because Ruiz did not raise it in his appeal to the BIA; so he has not exhausted his administrative remedies on this claim. 8 U.S.C. § 1252(d)(1) (we "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"); Amaya-Artunduaga v. U.S. Attorney Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006) (we lack jurisdiction to review a claim unexhausted before the BIA, even if the BIA has sua sponte addressed it).[2] Accordingly, we dismiss the petition for review of claims for asylum and CAT relief.

So, we have jurisdiction over Ruiz's petition for review only of a claim for withholding of removal. Ruiz sought relief based on his membership in a particular social group -- those who would speak out against the corrupt activities of former government official Vladimiro Montesinos and his cohorts.[3] Montesinos

---

[2]Even if we did have jurisdiction over Ruiz's CAT relief claim, he has waived appellate review of it by merely citing the relevant law and making only a generalized allegation of error. See Bayro v. Reno, 142 F.3d 1377, 1379 (11th Cir. 1998) (concluding that when a party fails to address an argument in their brief, they have abandoned it and waived their right to judicial review of it).

[3]In his asylum application, Ruiz indicated that he sought relief based on his political opinion. But at his asylum hearing, Ruiz clarified that he sought relief based only on his membership in a particular social group.

3

was the former head of Peru's intelligence agency and assistant to former president Alberto Fujimori. The record indicates that, in 1998 and 1999, Ruiz received death threats on several occasions from his employers Luis, Alberto, and Wilfredo Venero ("the Venero brothers") -- who were cousins and alleged cohorts of Montesinos -- based on Ruiz's implication in a corruption investigation of their company about government contracts. During the investigation, the Venero brothers forced Ruiz to testify -- by threat of death and harm to his family in addition to physical assault -- in a certain way to government officials. Both the company and Ruiz eventually were exonerated at the end of 1999.

Ruiz also claimed to be a member of the political party of then-president Fujimori and that, based on his political activities in Fujimori's 2000 re-election campaign, he feared reprisal from Montesinos. Records submitted by Ruiz indicate that Montesinos is in prison because of several suspected corrupt activities, but commands his supporters from prison in an effort to prevent more anti-corruption investigations. Ruiz indicated the he feared returning to Peru because of the Venero brothers and Montesinos and his mafia.

The IJ denied Ruiz withholding of removal because the mistreatment he suffered was not on account of an enumerated ground, but instead was the product of a private business matter involving possible extortion. In his appeal to the BIA,

4

Ruiz asserted that he was part of a particular social group of "men threatened by Vladimiro Montesinos, participating in social activities designed to better the lives of other similarly situated individuals." The BIA rejected this theory, concluding that Ruiz had not provided evidence of activities designed to better the lives of others and that the threats he received from the Venero brothers were not on account of Ruiz's association with a particular social group or political opinion, but instead because of a single corruption investigation of the Venero brothers's company.

We review the decisions of the IJ and the BIA in this case. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). An IJ's factual determination that an alien is unentitled to relief "must be upheld if it is supported by substantial evidence." Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien seeking withholding of removal must show that his life or freedom would more likely than not be threatened upon return to his country because of his race, religion, nationality, political opinion, or membership in a particular social

5

group.  Id; see also 8 U.S.C. § 1231(b)(3).  An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question.  Mendoza, 327 F.3d at 1287.

In his brief, Ruiz cites the relevant law for withholding of removal, and states that he has established eligibility for relief under controlling caselaw based on his membership in a particular social group.[4] But he does not show how the mistreatment he received  was on account of his alleged membership in an opposition group to Montesinos or how the conduct complained of was not merely about a private business matter and possible extortion.  While Ruiz fears reprisal from Montesinos if he returns to Peru, nothing in the record evidences that he ever directly was threatened by Montesinos or that Ruiz would be singled out by him upon return to Peru.  See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) ("The applicant must also establish a causal connection between the [statutory factor] and the feared persecution, presenting specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such [a factor].") (internal quotation omitted).  He also provided no

_____

[4]Ruiz also asserts that he suffered persecution based on his membership in group of "persons whose immutable ideological anti-corruption beliefs place them in danger of those who may be prosecuted as a result of ingrained beliefs."  To the extent that Ruiz is now asserting a new social group, we are without jurisdiction to consider it because he did not raise it before the BIA. See Amaya, 463 F.3d at 1250-51.

evidence of a connection between Montesinos and the investigation of the Venero brothers's company other than his own conclusory testimony.  In addition, nothing evidences that the extortion and threats by the Venero brothers were on account of Ruiz's opposition to Montesinos.  Therefore, because the evidence does not compel us to conclude that Ruiz is entitled to relief, we deny his petition for review of his claim for withholding of removal.

PETITION DISMISSED IN PART, DENIED IN PART.