[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 30, 2009
THOMAS K. KAHN
CLERK

No. 08-13354
Non-Argument Calendar

_____

Agency Nos. A98-862-357
A98-862-358

WILMER ALONSO PLATA-VEGA,
RAAQUEL GOMEZ-DELGADO,
ENRIQUE PLATA-GOMEZ,
WILMER JOSEPH PLATA-GOMEZ,
JEAN PIERRE PLATA-GOMEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 30, 2009)**

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Wilmer Plata-Vega, his wife, and their three children petition for review of the decision of the Board of Immigration Appeals that affirmed the denial of their applications for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. INA § 241(b)(3); 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(c). The Board concluded that Plata-Vega failed to prove that he suffered past prosecution or faced the probability of future persecution in Colombia. We deny Plata-Vega's petition.

## I. BACKGROUND

Plata-Vega and his family entered the United States in January 2005 as nonimmigrant visitors. In August 2005, Plata-Vega, on behalf of himself, his wife, and their children, filed an application for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. Plata-Vega sought relief based on his political opinion and membership in a particular social group.

Plata-Vega alleged that the Revolutionary Armed Forces of Colombia (FARC) threatened him and his family after his cousin, Hilis Plata, was elected mayor of Manaure, Colombia, in 2001. Plata-Vega did not join a political party in

Colombia, but worked with Hilis, a member of the Liberal Party, to counsel children to refrain from guerilla activities. Plata-Vega operated a family farm in Manaure, but lived 35 kilometers away in Valledupar where he owned several clothing stores.

In April 2002, FARC ordered Hilis to resign as mayor. The next month, a bomb exploded in Hilis's office while the building was closed for lunch. Several days later, members of FARC confronted Plata-Vega on his farm and ordered him to stop collaborating with Hilis and to abandon the property. Plata-Vega visited the United States in February 2003, but he did not request asylum because he was "on vacation," his family did not have visas, and he did not believe that the "threats were that great."

In November 2003, FARC mailed a letter to Plata-Vega in Valledupar and instructed him to end his collaboration with his cousin and to leave his farm. Plata-Vega received a second letter from the FARC in September 2004 that contained the same instructions and cautioned Plata-Vega that they had planted antipersonnel mines around the farm. In November 2004, Plata-Vega complained to authorities about the threats he had received, but the government did not offer him protection. After Plata-Vega's cousin Eliezar Plata disappeared, Plata-Vega and his family moved to the United States.

Plata-Vega submitted several documents in support of his application. He

3

filed a copy of the April 2002 letter in which FARC instructed Hilis to resign and a second letter that threatened to harm Hilis's family if he did not resign; newspaper articles that described the bombing of Hilis's office at city hall and the November 2004 disappearance of Plata Vega's cousin; and copies of the November 2003 and September 2004 letters from FARC to Plata-Vega. Plata-Vega also filed a declaration from an office of human rights that stated that he and his family had been displaced by violence.

At his removal hearing, Plata-Vega explained that he postponed reporting the threats to Colombian authorities because he was too busy to stop his activities. He stated that he returned to Colombia after his three visits to the United States because he thought the FARC would stop their threats. Plata-Vega acknowledged that his mother, sister, and brother, and Hilis and his family, remained in Colombia unharmed.

The immigration judge found Plata-Vega credible, but ruled that he failed to meet the burden of proof for asylum and withholding of removal. The immigration judge found that Plata-Vega had based his application "on the activities of" Hilis. Hilis's continued residence in Colombia "diminishe[d]" Plata-Vega's request for asylum. The judge gave the letters from FARC to Plata-Vega "limited weight or no weight at all" because they were on different letterhead and because of "the level of fraud in this particular area." The judge found that Hilis had been the

4

likely target of the bombing; the FARC threatened, but never harmed Plata-Vega; Plata-Vega's return to Colombia as the violence allegedly escalated undercut his argument that he feared for his life; and because Hilis had left office, there was "no reason as to why anyone would want to harm" Plata-Vega if he returned to Colombia. The judge found that Plata-Vega "and his family were not displaced individuals" though they were "dispossessed of" the farm because there was "no evidence that anyone harmed [Plata-Vega] in Valledupar" or that he "could not continue to reside" there. Based on these findings, the judge concluded that Plata-Vega had not suffered past persecution and did not have a well-founded fear of future persecution.

The Board dismissed Plata-Vega's appeal. The Board found that Plata-Vega did not establish that he or his cousin was a target of the bombing and the threats he had received did "not rise to the level of past persecution." The Board agreed with the immigration judge that Plata-Vega did not establish a well-founded fear of persecution because he failed to prove that he had suffered past persecution and his family had remained in Colombia unharmed.

## II. STANDARD OF REVIEW

We review the decision of the Board to determine whether it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (quoting

5

Lorisme v. INS, 129 F.3d 1441, 1444–45 (11th Cir. 1997)). "To reverse [those] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (citing Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002)).

## III. DISCUSSION

Substantial evidence supports the finding that Plata-Vega did not have a well-founded fear of future prosecution. Plata-Vega testified that he vacationed in the United States as the threats against him allegedly escalated, but he returned to Colombia despite these threats. Plata-Vega also did not suffer any physical harm. Plata-Vega's cousin has left his political office and Plata-Vega, who had never joined the Liberal Party, has discontinued his activities that were adverse to the FARC. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237–38 (11th Cir. 2006). Plata-Vega retained his home in Valledupar, and his family and Hilis' family remain unharmed in Colombia. See De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1011–12 (11th Cir. 2008). The record does not compel "a reasonable factfinder . . . to conclude that the requisite fear of persecution exists." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323–24 (11th Cir. 2001).

## IV. CONCLUSION

Plata-Vega's petition for review is **DENIED**.

**PETITION DENIED.**

6