[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15782
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2009
THOMAS K. KAHN
CLERK

Agency No. A099-642-640

ADIN ABIESER PERAZA RECINOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 27, 2009)

Before DUBINA, WILSON and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

Adin Abieser Peraza Recinos, a native and citizen of Guatemala, petitions for review of the decision of the Board of Immigration Appeals that affirmed the decision of the Immigration Judge dismissing his application for asylum and withholding of removal. The Board ruled that Peraza's application for asylum was untimely and that he failed to establish eligibility for withholding of removal because he failed to prove a nexus between the harm he feared and a protected ground. We lack jurisdiction to review the denial of Peraza's application for asylum, and we deny his petition for review of the denial of his application for withholding of removal because the record does not compel a finding contrary to the decision of the Board.

## I. BACKGROUND

Peraza entered the United States on March 23, 2003, when he was sixteen years old. On April 18, 2006, he applied for asylum, withholding of removal, and relief under the Convention Against Torture. On May 30, 2006, federal authorities charged Peraza with removability. The Immigration Judge held a removal hearing on June 13, 2006.

Peraza was the only witness who testified in support of his application. Peraza stated that he joined the PAN political party, a right-wing party, when he was fifteen years old. Peraza also stated that he was paid to help the PAN party

distribute political flyers and t-shirts on the weekends and that members of the FRG political party, a left-wing party, had once attacked him while he worked and destroyed his flyers and t-shirts. Peraza testified that he did not sustain any injuries or receive any medical attention as a result of this incident. Peraza also testified that, on the same day, members of the FRG party shot at the home of his family from a car. Peraza did not recognize any individuals in the car, but he stated that he saw the FRG logo painted on the car. Peraza testified that he did not file a police report about the shooting.

Peraza could not explain why his PAN party membership card stated that he joined the party in 1996, when he was ten years old. Peraza also could not explain why the date he provided for the attack and shooting, February 19, 2003, was a Wednesday, even though he stated he distributed flyers and t-shirts on weekends. Peraza did not know how the FRG party knew where he lived. Peraza also stated that he had not relocated within Guatemala to avoid confrontations with the FRG party and that his family, who has not relocated, had not experienced any threats or attacks since he left for the United States.

The Immigration Judge denied Peraza's application. The Immigration Judge denied Peraza's application for asylum as untimely and determined that Peraza failed to establish eligibility for withholding of removal because he failed to prove

3

that he was persecuted on the basis of his political activity. The Immigration Judge found that Peraza's testimony did not prove that the shooting incident occurred because of his political activities and that his documentary evidence did not corroborate his claims.

Peraza appealed, and the Board dismissed his appeal in September 2008. The Board noted that Peraza had not appealed the denial of his application for asylum and agreed with the Immigration Judge that Peraza failed to establish a nexus between the harm he feared and a protected ground. Peraza timely petitioned this Court for review of the denial of his application for asylum and withholding of removal.

## II. STANDARD OF REVIEW

Our standard of review is deferential. "[F]indings of fact made by administrative agencies, such as the [Board of Immigration Appeals], may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"). "[W]e view the record evidence in the light most favorable to the

4

agency's decision and draw all reasonable inferences in favor of that decision."

Adefemi, 386 F.3d at 1027. "We may not 're-weigh the evidence' from scratch."

Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (quoting

Lorisme v. INS, 129 F.3d 1441, 1444–45 (11th Cir. 1997)). When the record

could support or contradict the conclusion of the Board, we must affirm its

decision. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236–37 (11th Cir. 2006).

### III. DISCUSSION

We lack jurisdiction to review the denial of Peraza's application for asylum

because he failed to appeal the decision of the Immigration Judge about the

application to the Board. We "may review a final order of removal only if . . . the

alien has exhausted all administrative remedies available to the alien as of right," 8

U.S.C. § 1252(d)(1), and an alien must raise a claim before the Board to exhaust

his administrative remedies, Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d

1247, 1250 (11th Cir. 2006) (per curiam). The Immigration Judge determined that

Peraza's application for asylum was untimely because Peraza filed it on April 18,

2006, more than three years after he entered the United States on March 23, 2003,

and Peraza failed to appeal this ruling to the Board. We lack jurisdiction over

Peraza's petition for review of the denial of his application for asylum.

We deny Peraza's petition for review of the denial of his application for

withholding of removal because the record does not compel a finding that Peraza proved a nexus between the harm he feared and a protected ground. Even though the Immigration Judge credited Peraza's testimony, the Immigration Judge identified deficiencies in the testimony that prevented Peraza from proving that he reasonably feared persecution because of his political beliefs.

As an initial matter, the nature of Peraza's political affiliation is unclear. The only political activity in which Peraza alleged that he participated was the distribution of leaflets and t-shirts for the PAN party, but it is "not even known whether these activities were done . . . to assist in the party or as to serve as a job for [Peraza] to supplement his income." The Immigration Judge "believe[d] that [the party identification card] submitted by [Peraza] . . . raise[d] more question with respect to [his] credibility than [it] assisted in corroborating his claim" because the identification card stated that Peraza became affiliated with the PAN party when he was 10 years old, and Peraza testified that he started his political activities at the age of 15.

Even assuming Peraza was an active member of the PAN party, Peraza failed to prove that he is at risk of harm because of this affiliation. Peraza alleged that he was once attacked by members of the FRG party while he distributed leaflets and t-shirts on a weekend, but the date Peraza mentioned in his testimony

6

was a Wednesday.  Even setting aside this inconsistency, based on Peraza's own testimony, he was not harmed during this incident.  Although Peraza asserts in his brief that members of the FRG party "tried to burn [him] alive," that assertion is not supported by the record.  Peraza alleged only that his political materials were taken and burned.  As the Immigration Judge found, Peraza did not allege that he sustained any injuries or received any medical treatment related to this incident.

The only incident that the Immigration Judge considered as possible persecution occurred when individuals driving a car with the FRG party logo shot at Peraza's home, but "[Peraza's] evidence does not compel the conclusion that the shooting was connected to h[is] political activity."  Silva, 448 F.3d at 1238. Peraza's testimony that the shots hit above the windows of the house and "did not actually penetrate into the house" does not establish that the shooting was even meant to injure any particular inhabitant of the residence he shared with his family, much less why the shooting occurred.

Peraza speculated that the shots were fired at his home because of his political activities, but he proved no facts to substantiate his opinion, no matter how sincere and reasonable it may have been.  Peraza did not file a police report and, most importantly, "did not know how these individuals could have known where he resided."  Peraza did not recognize the driver or passengers in the car.

7

The shooters did not say anything, and Peraza offered no proof that members of the FRG ever communicated that the shooting was related to Peraza's political opinion.

Peraza did not offer any proof that compels a finding of a connection between the alleged shooting incident and his political activities. At the least, this absence of proof allows an inference that the shooting incident was unrelated to Peraza's earlier political activities. See id. (holding that Silva did not prove a connection between an alleged shooting and her political activity). The Immigration Judge found from deficiencies in Peraza's evidence that Peraza failed to prove a nexus between his political activities and the harm he feared, and we cannot "re-weigh" the evidence. Mazariegos, 241 F.3d at 1323. Because the absence of proof supports the finding of the Immigration Judge, even if some evidence may support a different finding, we must deny Peraza's petition. Adefemi, 386 F.3d at 1027; 8 U.S.C. § 1252(b)(4)(B).

## IV. CONCLUSION

Peraza's petition is **DISMISSED** in part and **DENIED** in part.

8

WILSON, Circuit Judge, dissenting:

The majority concludes that the Board of Immigration Appeals ("BIA") was correct in finding that Peraza-Recinos has not demonstrated a connection between his persecution by the Guatemalan Republican Front ("FRG") party and his political opinion– or at least, that the record does not compel recognition of such a connection. I disagree.

Under the Immigration and Nationality Act, an alien seeking withholding of removal must show that his "life or freedom would be threatened in [his] country [of origin] because of [his] . . . political opinion." 8 U.S.C. § 1231(b)(3)(A). Although our standard of review is deferential, we are not required to uphold BIA decisions where the record compels a different result. Here, the BIA held that Peraza-Recinos had not established that he was persecuted on the basis of his political opinion. This holding is direct conflict with the facts of the case.

Peraza-Recinos grew up in a family active in the National Advancement ("PAN") party. The IJ found that Peraza-Recinos was a card-carrying member of the PAN party and that he routinely campaigned on their behalf. Peraza-Recinos campaigned by distributing leaflets and tee-shirts, and PAN paid him for his time.

9

On February 19, 2003, when he was sixteen years old, Peraza-Recinos was distributing PAN party flyers and tee-shirts when he was verbally and physically assaulted by members of the FRG party. The FRG members threatened to kill Peraza-Recinos and attempted to burn him alive. The FRG members succeeded in taking his campaign materials and incinerating them. Then, later that evening, while Peraza-Recinos was at home, his family home was subjected to a drive-by shooting. Several shots were fired at his house by individuals driving a car *labeled with the FRG logo*. Peraza-Recinos witnessed the drive-by.

I would hold that Peraza-Recinos established a connection between his political activities, the FRG's physical assault, and the FRG's attack on his home. Each of these instances occurred on *the same day*. The attacks perpetrated upon Peraza-Recinos and his family were far from "[m]ere harassment. . . ." *Ruiz v. Gonzales*, 479 F.3d 762, 766 (11th Cir. 2007) (internal quotation marks and citation omitted).

Although the IJ did express some skepticism about Peraza-Recinos' testimony because February 19, 2003 was a Wednesday, and he testified that he typically campaigned on the weekends, and because he had neither filed a police report nor stated in his asylum application that the drive-by vehicle had the FRG

10

logo on the car, the IJ notably did not make an adverse credibility finding in Peraza-Recinos' case.

Additionally, although the majority relies on the IJ's comment that it is "not even known whether [Peraza-Recinos' campaign] activities were done . . . to assist in the party or to serve as a job for [him] to supplement his income," apparently to suggest that perhaps Peraza-Recinos was not truly expressing his political opinion by campaigning, I can find no case where we have held that only unpaid voluntary campaign work expresses one's political opinion. Nor would I find such a contention logical or even relevant to the question. Peraza-Recinos has presented compelling evidence that he was attacked because he was working for the PAN party. It is irrelevant whether he may have had multiple reasons for doing so.

I would not hold that Peraza-Recinos' inability to explain how his attackers located his home dissipates the substantial evidence that he was attacked on the basis of his political opinion. Perhaps Peraza-Recinos was followed as he fled from the FRG members' attempt to burn him alive. Perhaps his family's political activities on behalf of PAN had garnered such notoriety that FRG members had previously taken steps to locate their home. The point is that the FRG members did locate his home, and they shot at it multiple times.

11

The majority concludes that, because the shots fired by the FRB at Peraza-Recinos' home struck "just above the windows of the house and 'did not actually penetrate into the house,'" the shooting may not have been "even meant to injure any particular inhabitant of the residence he shared with his family. . . ." Similarly, the majority emphasizes that Peraza-Recinos did not sustain any injuries when he was attacked by the FRG, suggesting that he might not have truly been their target, even though the FRG were successful in incinerating his political propaganda. I would not hold that such attacks must be "successful" – that bullets fired in a drive-by shooting must penetrate a person or that a targeted victim must fail to escape – in order to qualify an attack as an instance of persecution. Such a holding would moot asylum.

Additionally, the majority relies on the fact that "[t]he shooters did not say anything" to conclude that Peraza-Recinos "offered no proof that members of the FRG ever communicated that the shooting was related to his political opinion." I would not require such explicit verbal evidence. On the same day that FRG members attacked Peraza-Recinos and burned his campaign materials, individuals in a car labeled with the FRG logo shot at his house. I cannot support the majority's suggestion that the perpetrators of a drive-by shooting must shout out "I

12

am shooting at your home because of your political opinion" for our Court to recognize such a connection.

Furthermore, Peraza-Recinos' testimony is in stark contrast with the testimony we found unconvincing in *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1238 (11th Cir. 2006). Whereas Silva "did not know who shot at her car or why," Peraza-Recinos' attackers boldly declared that they were members of the FRG party by displaying the FRG logo on their vehicle. Peraza-Recinos testified that he knew why he was attacked. He was attacked because of his work on behalf of the PAN party. He was attacked because of his political opinion.

Peraza-Recinos was harmed by members of an opposing political party because of his membership in and promotion of the PAN party. Substantial evidence does not support the BIA's decision that Peraza-Recinos failed to establish a nexus between his alleged harm and his political opinion. Therefore, I would grant Peraza-Recinos' petition with respect to his withholding of removal claim and remand for the BIA to determine whether he suffered past persecution or established that it is more likely than not that he will be persecuted upon removal due to his political opinion.

For these reasons, I respectfully dissent.