PRYOR, Circuit Judge:
Anthony Michael Akapo, a native citizen of Sierra Leone, and his wife, Eugenia Cecilia Akapo, petition this Court for review of the decision of the Board of Immigration Appeals, which denied their applications for asylum and withholding of removal based on political and social group persecution. Eugenia Akapo has adopted her husband’s arguments as the derivative beneficiary of his application. Akapo asserts that he suffered past persecution and has a well-founded fear of future persecution in Sierra Leone by members of the rebel group Revolutionary United Front on account of his political opinion. The Board found that Akapo was not entitled to asylum or withholding of removal because a fundamental change in country conditions in Sierra Leone rebutted the presumption of a well-founded fear of future persecution. Because that finding is supported by substantial evidence, we deny the petition.
I. BACKGROUND
Akapo previously petitioned this Court to review the initial denial of his application for asylum and withholding of removal, and we remanded because the Board failed to render a reasoned decision. Akapo v. U.S. Att’y Gen., 299 Fed.Appx. 873 (11th Cir.2008). In its first decision, the Board had stated that “there [was] no indication in the record that former [Revo *903 lutionary United Front] rebels continue[d] to target those whom they believed were their enemies.” We concluded that the Board overlooked evidence of two potential death threats against Akapo and misstated the record.
On remand, the Board again dismissed the appeal and denied Akapo’s petition for asylum and withholding of removal. The Board explained that, even assuming Aka-po had suffered past persecution, country reports prepared by the Department of State proved that circumstances in Sierra Leone had fundamentally changed, which rebutted the presumption of a well-founded fear of future persecution. The Board found that the two death threats Akapo received after fleeing Sierra Leone had “limited evidentiary value” because one was undated and both were unsigned and from unknown sources. The Board also reasoned that Akapo left Sierra Leone ten years ago and that his children were living safely in The Gambia.
II. STANDARD OF REVIEW
We review de novo the conclusions of law by the Board of Immigration Appeal, but we review findings of fact for substantial evidence to support them. Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir.2001). Our review for substantial evidence is highly deferential. Id. at 1284. We “must affirm the [decision of the Board] if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.” Id. at 1284 (internal quotation marks omitted). “[W]e view the record evidence in the light most favorable to the agency’s decision and draw all reasonable inferences in favor of that decision.” Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir.2004) (en banc). We may not “re-weigh the evidence from scratch.” Mazariegos v. U.S. Att’y Gen., 241 F.3d 1320, 1323 (11th Cir.2001) (internal quotation marks omitted). “[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.” Adefemi, 386 F.3d at 1027. To reverse factual findings by the Board, “we must find that the record not only supports reversal, but compels it.” Mendoza v. U.S. Att’y Gen., 327 F.3d 1283, 1287 (11th Cir.2003). Although the Board must “consider all evidence introduced by the applicant,” we do “not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.” Tan v. U.S. Att’y Gen., 446 F.3d 1369, 1374 (11th Cir.2006) (internal quotation marks omitted).
III. DISCUSSION
An immigration judge and the Board of Immigration Appeals, acting on behalf of the Attorney General, have discretionary authority to grant asylum to those applicants who qualify as “refugees.” 8 U.S.C. § 1158(b)(1). The applicant must prove that he meets the definition of a refugee. Id. § § 1101(a)(42)(A), 1158(b)(l)(B)(i). After an applicant proves that he is a refugee, the applicant bears the burden of proving that he is entitled to asylum relief.
An applicant can establish eligibility for asylum relief by proving persecution in one of two ways: (1) proof that he was persecuted in the past on account of a protected ground; or (2) proof that he has a well-founded fear of future persecution on account of a protected ground. Silva v. U.S. Att’y Gen., 448 F.3d 1229, 1236 (11th Cir.2006); see also 8 C.F.R. § 208.13(b). If the applicant proves past persecution, he is entitled to a presumption of a well-founded fear of future persecution, subject to rebuttal by the government. 8 C.F.R. § 208.13(b)(1). The government can rebut the presumption of a well-founded fear of future persecution by proving, by a pre *904 ponderance of the evidence, either that there has been a fundamental change in circumstances in the applicant’s country or that the applicant could avoid future persecution by reasonably relocating in another part of the country. Id. § 208.13(b)(1 )(i). The Board assumed that Akapo had proved past persecution and was entitled to a presumption of a well-founded fear of future persecution, but the Board determined that the government had proved a change in country conditions in Sierra Leone to rebut Akapo’s fear.
Akapo argues that the Board erred when it found that two death threats against him were of “limited evidentiary value,” but the record does not compel us to reverse this finding. The Board reasoned that the letters were unsigned and received from unknown sources. The first letter is dated June 13, 2004, and the second letter is undated. The letters allege that Akapo caused the death of the author’s children by identifying them as rebels to the opposition forces. It was reasonable for the Board to question the authenticity and discount the evidentiary weight of the two letters.
The only evidence Akapo presented to corroborate the death threats was an affidavit from his son, but that affidavit raises more questions than it answers. The affidavit states that Akapo’s son received the second letter in January 2005 from Sierra Leone, but it does not provide any information about when the letter was written. Although the first letter is dated, on its face, in 2004 and Akapo’s son received the second letter in January 2005, both of the letters predate the report of the Department of State upon which the Board relied on to find that circumstances in Sierra Leone had fundamentally changed; that report about conditions during the entire year of 2005 was published on March 8, 2006. See Bureau of Democracy, Human Rights, and Labor, U.S. Dep’t of State, 2005 Country Reports on Human Rights Practices: Sienta Leone (March 8, 2006), available at http://www.state.gOv/g/drl/rls/ hrrpt/2005/61591.htm. There is no evidence in the administrative record that Akapo received any threat after the State Department reported that conditions in Sierra Leone had changed. The affidavit also does not provide any information to identify the author of the letters.
Substantial evidence supports the decision of the Board that a fundamental change in country conditions rebutted Akapo’s fear that former rebels would target him if he returned to Sierra Leone. The Board found, and the record supports its finding, that the civil conflict in Sierra Leone ended in 2002, when the government that Akapo supported regained power. In 2002 the rebels and the government-allied militia completed disarmament and international monitors declared the 2002 national elections and the 2004 local elections to be free and fair. By the end of 2004, United Nations peacekeepers withdrew from Sierra Leone. By the end of 2005, trials were in progress for about a hundred former rebel leaders and combatants. During 2005, no politically motivated killings by the government or its agents were reported. There were no reports of politically motivated disappearances in 2005. Although there is some evidence in the country reports that rebels may continue to commit some human rights abuses, such as continuing to hold women and children as forced common law spouses or laborers, the country reports do not evince that rebels target individuals like Akapo who had opposed the rebels during the civil conflict. See id. The record does not compel us to reverse the finding that circumstances in Sierra Leone had fundamentally changed to rebut Akapo’s fear.
*905 We do not reweigh the evidence, Mazariegos, 241 F.8d at 1323; instead, we consider whether the decision by the Board is supported by substantial evidence. Because Akapo failed to establish that he is entitled to asylum, he also failed to satisfy the more stringent standard for withholding of removal. See id. at 1324 n. 2; see also Al Najjar, 257 F.3d at 1292-93.
We DENY the petition.
PETITION DENIED.