[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2010
JOHN LEY
CLERK

No. 09-12248
Non-Argument Calendar

_____

Agency Nos. A095-903-915
A095-903-916


LUIS ERNESTO CANTILLO-CHARRIS,
AMELIA CASTANEDA REYES,
FERNANDA AMELIA CANTILLO-CASTANEDA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 10, 2010)

Before EDMONDSON, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Luis Ernesto Cantillo-Charris, along with his wife and daughter[1], natives and citizens of Colombia, petition for review of the decision by the Board of Immigration Appeals ("BIA") affirming the denial of asylum by the Immigration Judge ("IJ").[2] No reversible error has been shown; we deny the petition.

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review de novo legal determinations of the BIA. Id. A factual determination that an alien is unentitled to relief "must be upheld if it is supported by substantial evidence." Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

---

[1]Cantillo-Charris included his wife and daughter as a derivative beneficiaries in his asylum application; so our decision about Cantillo-Charris also applies to them.

[2]The decision also denied withholding of removal and relief under the Convention Against Torture. But on appeal, Cantillo-Charris offers no argument on these issues; and thus, he has abandoned them. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that petitioner abandons an issue by failing to offer argument on that issue).

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion or membership in a particular social group.  8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1).  The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence.  Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

Cantillo-Charris claimed that the Revolutionary Armed Forces of Colombia ("FARC") persecuted him because of his political opinion and membership in a particular social group.  Cantillo-Charris operated a dental prosthesis laboratory in Bogota.  In January 1998, armed men who identified themselves as members of the FARC came to Cantillo-Charris's lab and demanded that he provide them with dental services.  These men returned on many occasions that year so that Cantillo-Charris could proceed with their dental work.  And during these visits, they threatened to kidnap Cantillo-Charris so that other FARC members could receive free dental services.

To avoid the FARC, Cantillo-Charris closed his dental lab, moved to the town of Bosconia (where some of his family lived), and began transporting bananas.  Once, the FARC asked him to transport weapons and drugs for them, but Cantillo-Charris refused.  Cantillo-Charris later stopped transporting bananas and

received a government contract in Bosconia to transport government officials. On one occasion, the FARC stopped Cantillo-Charris and the men he was transporting at a guerilla checkpoint. The FARC threatened Cantillo-Charris with death if he continued to transport government officials. The FARC also recognized Cantillo-Charris from his dental lab in Bogota and told him that other FARC members needed dental work; but Cantillo-Charris told them that he had closed the lab. Cantillo-Charris believed that the FARC was targeting him because they wanted free dental work for its members.

Cantillo-Charris also testified that his brother-in-law, who also had transported government officials in Bosconia, had been shot and killed under mysterious circumstances a few years before. Cantillo-Charris believed that the FARC was responsible for his brother-in-law's death.

The IJ determined, in part, that Cantillo-Charris did not show how the FARC's mistreatment of him was on account of his political opinion or membership in a particular social group. The BIA agreed that Cantillo-Charris was not persecuted and had no well-founded fear of future persecution because of an actual or imputed political opinion or because of his membership in a particular social group. On appeal, Cantillo-Charris argues that he demonstrated eligibility for relief based on the imputed political opinion of his murdered brother-in-law

4

who, like him, had transported government officials and his membership in a group of experienced providers of dental prosthesis in Colombia.

After review, we conclude that substantial evidence supports the BIA's determination that Cantillo-Charris failed to show a nexus between the facts of his case and one of the protected grounds for asylum. Cantillo-Charris failed to show that those persons who provide dental prosthesis services in Colombia are sufficiently visible in Colombian society or sufficiently limited in number to qualify as a particular social group. See Castillo-Arias v. U.S. Attorney Gen., 446 F.3d 1190, 1196-97 (11th Cir. 2006) (deferring to the BIA's analysis that non-criminal informants did not constitute a social group where the BIA chiefly considered the numerosity of the group, the immutability of its characteristics, and the social visibility of the group). And Cantillo-Charris also failed to show that other dentists in Colombia have been targeted for persecution by the FARC.

About political opinion, although Cantillo-Charris's brother-in-law had been killed allegedly at the hands of the FARC for transporting government officials, when the FARC stopped Cantillo-Charris at the checkpoint, they told him they wanted him to provide dental services.[3] Cantillo-Charris himself testified that the FARC was searching for him to obtain dental services. So, although the guerilla

---

[3]Cantillo-Charris also testified that he belonged to the Conservative Party and had campaigned for another brother-in-law for mayor of Bosconia; but the FARC did not target him for these activities. In fact, nothing indicates that the FARC even knows this information.

5

checkpoint incident might support an inference that Cantillo-Charris was targeted because of his political opinion, the record does not compel the conclusion that the BIA erred in concluding that the FARC was interested chiefly in recruiting Cantillo-Charris or obtaining his dental services. See Rodriguez Morales v. U.S. Attorney Gen., 488 F.3d 884, 891 (11th Cir. 2007) (concluding that petitioner's testimony that he told the FARC that he disagreed with their cause could support an inference of persecution because of political beliefs, but that the evidence equally supported an inference that he was threatened simply because of his refusal to provide dental services).

Substantial evidence supports the BIA's decision that Cantillo-Charris was unentitled to asylum; and we are not compelled to reverse the BIA's decision. We deny Cantillo-Charris's petition for review.

PETITION DENIED.

6